May it please the Court, Davina Chan on behalf of Gustavo Suchite Casasola. Mr. Casasola is not a U.S. citizen because his parents are married now and have been during the entire period relevant to this case. If they had been divorced or even legally separated before Mr. Casasola turned 18, he would be a U.S. citizen. We should be clear, the relevant distinction here is not between having two custodial parents and one custodial parent. The distinction is between having legally married parents and legally separated parents. If Mr. Casasola's parents had been legally separated, he would be a U.S. citizen regardless of whether they were shared custody, joint custody, or sole legal custody of the father. Because they were married and remain married, he is not. This makes no sense. How does the Bartholomew decision square with the arguments you're making today? Are we to ignore it or to overrule it? You certainly can't overrule it. You shouldn't ignore it, but what you should do is read it carefully. And what's clear when you read it carefully is that the distinction that is being addressed in Bartholomew is different from the distinction that is being drawn here. In that case, the question was whether the legal separation requirement made sense in the context of the distinction between a de facto separation and a legal separation. In that case, the parents were not married. They had never been married. They had no intact relationship. And the example that the court relied on in reaching the conclusion that the distinction in that case had a rational basis really drives that point home. The example the court relied on in Bartholomew is what if one of the non-marital parents kidnapped the child, brought them to the United States, and then naturalized? The court said in that instance, the legal separation requirement will protect the rights of the alien parent. Whatever force that argument has in the context of parents who are de facto separated, it has no relevance in the context of parents who are married. So I would say certainly if the distinction in Bartholomew was the same distinction as is being argued in this case, this court would be bound by it, regardless of the fact that the court didn't address the arguments that I'm raising here. But this court isn't bound by it because the distinction in that case is a different distinction than the one here. Or it doesn't control. It doesn't control. Are we required to review the entire statutory scheme for consistency? You're not required to review the entire statutory scheme for consistency. But when you're looking, the government proffers this explanation that Congress could have intended to protect the alien parent's parental rights. So when you're trying to decide whether that could actually have been Congress's intent, it is important to look at the entire statutory scheme, especially because the requirement of both parents being naturalized came into effect in 1940. And the very same act that created that requirement created a mechanism for the U.S. citizen parent to naturalize their child with no say whatsoever from the alien parent. And I would submit that this is an indication that that could not, in fact, have been Congress's intent. First of all, there's absolutely no evidence anywhere in the legislative history that that was Congress's intent. But I know that's not dispositive. So when you look to see whether it could have been Congress's intent, it is important to look at the entire statutory scheme. What other changes to immigration law did they make in 1940? They created a mechanism for a U.S. citizen parent to naturalize their child without any input from the alien parent. So, of course, when we're looking at a distinction, we have to look at which distinctions are being drawn. And in this particular case, the distinction is drawn between the married parent and the legally separated parent. The distinction is not being drawn between two parents who have custody and one parent who has custody. I would submit that if Congress had intended to, quote, protect the rights of the alien parent, they wouldn't have drawn the distinction in this manner. And that's the only rationale that the government proffers. That rationale fails for at least two reasons. One, I don't believe that it could have been Congress's purpose. And second, even if it had been Congress's purpose, the distinction doesn't fit with the purpose. It's not rationally related to the purpose. The government argues that the lack of a perfect fit doesn't render the distinction irrational. But this is like not just that there's no perfect fit. This is no fit at all. And when there's no fit at all, I would submit that that means either that this was not in fact the purpose or that it's not rationally related to the purpose or both. There is a Fifth Circuit case that I think talks about this problem. Your Honor, is that Bustamante? I think so. I think so. Yes, there is a Fifth Circuit case that talks about this problem. But what's interesting about that Fifth Circuit case is that it holds that legally separated parents cannot children of legally separated parents do not derive custody unless the naturalizing parent has full custody. And I think that's the Fifth Circuit case that you're referring to. What's interesting about that case is it notes right in the case that this issue had never been presented to the BIA in that case. And so they decided at a full clock without any discussion from the BIA. And the cases that I cited in my 28-J letter indicate that the BIA, the AAO, and the State Department all would give someone U.S. citizenship if their parents were legally separated even if they shared custody. So in terms of the equal protection issue, what we're talking about is if Mr. Casasola's parents had been legally separated and his father had full custody or they had shared custody and they went to the State Department and asked for a passport, that passport would have been issued. If they had gone to the immigration services and asked for a certificate of citizenship, that would have been issued. The reason it is not issued is because they're married. And again, I would submit that that makes no sense and it does not survive rational basis. If the Court doesn't have any further questions, I would reserve. Thank you. Thank you. Good morning, Your Honors. David Herzog for the United States. I was also counsel in the District Court. May I please have the floor? Well, what did you and the judge miss in the District Court about the Bartlemey case? Your Honor, I don't believe we missed anything. Bartlemey controls this case. And I would agree with counsel that the Court should read that case carefully because what that case stands for is that it is not just the government that offers this rational, facially, premature rational explanation. It is, in fact, this Court in the Bartlemey decision. The difference between the Bartlemey case and this case is that in Bartlemey, the parents were never married and therefore could not legally separate. In this case, the parents were married and did not legally separate. But what is relevant about the Bartlemey case is that it directly addresses the issue of automatic citizenship in this situation. For the equal protection claim, the reason that matters is that this Court has concluded that it is rational to protect the rights of the alien parents in this manner. And I would submit to the Court that in both the Bartlemey case and this case, that objective was achieved. In this case, had the defendant's mother naturalized prior to the defendant's 18th birthday, which she could have based on her husband's citizenship, had she done that, the defendant would be a citizen. She did not do that. By not naturalizing herself, she expressed her own will for her child, which was that he was not to become a U.S. citizen. Counsel's right, it's not a perfect fit. And as this Court noted, in Bartlemey at 1062, this Court noted, the statute may not be perfect. Perhaps Congress should have carved out additional routes to citizenship. But the statute does not have to be perfect to survive rational basis. And yes, it is true that the defendant can point to certain factual scenarios in which the statute is not a perfect fit. But that does not render the statute irrational. As written, the statute does protect the rights of alien parents because it prevents the automatic citizenship process from taking place without that parent's consent. So I don't understand how the defense gets around Bartlemey in this case. The rationale in Bartlemey applies squarely. With regard to the other authorities set up by the defendant in the 28J letters. Well, I guess, is it correct that we wind up with a situation where the child of legally separated parents who have joint custody gets derivative citizenship? But if they're married and have joint custody, there's no derivative citizenship? It depends on the citizenship status of each parent. In the context in which you've got an American parent, a naturalized American citizen parent, and an alien parent, yes, in this case, if they are married, as happened here, and both parents aren't naturalized prior to the defendant's 18th birthday, in that situation, yes, it is true that there's a distinction between the married parent and the separated parent, of all things being equal. But that's still rational because it still protects the rights of, in this case, the defendant's mother. Now, the defendant's, at this point. Well, if they're married and if they were separated and there was, I guess it doesn't make sense to me. The reason why it's rational, Your Honor, is that, in that Congress is trying to tailor a rule that will apply, you know, across a broad spectrum of factual scenarios, the basic principle is the one articulated in Wedderburn and Bartholomew, which is that the distinction between married and separated is often going to be a proxy for parental, for custodial parenthood. That if the separated parent has no say over what happens to the child in terms of citizenship, then it makes sense for the citizen parent to be able to have automatic control over naturalizing that child. Now, in a case like this, I agree with the Court. It is not perfectly tailored to this situation. But that doesn't mean it's not rational in that Congress is still trying to protect the rights of the alien parent to prevent automatic citizenship, right? The statute, the will of the non-custodial, the will of the non-citizen parent is what Congress is trying to take into account. And even in this case where it's not a perfect fit, the defendant's mother, by not naturalizing, expressed her will for her child not to become a citizen. And there are a number of reasons why you wouldn't want your child to become an American citizen if you were an alien, including military service and taxation, as Wedderburn puts out. If there are no further questions, I'll stop. I have no questions. Thank you. I have three points. First, the government has repeatedly stated that Mr. Casasola's mother expressed her will for her child not to become a U.S. citizen. That couldn't have been further from the truth. She didn't naturalize. They understood that their child was a U.S. citizen when her husband naturalized. She is naturalized now. All of her children are U.S. citizens now. So this idea that Mrs. Casasola expressed her will for her child not to become a U.S. citizen by failing to naturalize in time is just utterly false. How long after the petition was filed did she naturalize? After she naturalized, I believe, I have to check the record, but I think it was around 2002. So it was after our client became, turned 18. So it was too late for him. Right. And they were living, the mother and the father were living together. They were living together. They were married. They were both exercising joint legal and actual custody. And they were, and the father became a citizen and the mother didn't become a citizen until later. Not in time. If they had been legally separated. Then Mr. Casasola would be a U.S. citizen. And your point is it doesn't make sense. The second thing is that government counsel has emphasized several times that congressional intent was this. Congressional intent was that. In fact, we have no evidence that congressional intent was to protect the right of the alien parent. And the absolute lack of fit is some evidence that it was not, in fact, congressional intent. And then my third point is government counsel has insisted that I cannot get around Bartholomew. But the fact is that Bartholomew addressed a totally different issue. And so there's no need to get around it. It's not binding on this court. Let's go, tell us about Bartholomew one more time. Why is it a completely different issue? Bartholomew addressed the issue of the legal separation requirement. But it addressed the issue of the legal separation requirement in the context of a marriage that was not intact. So it was a question of whether the fact that the parents were de facto separated should be enough to give the child U.S. citizenship. And the example that this court relied on was to show that the legal separation requirement was important, was significant, did serve some purpose, was an example of a case where the U.S. citizen parent would go to the lease, in this instance, and kidnap the child, bring them to the United States, and then the child would become a U.S. citizen because the de facto separated parents, the father has custody, so therefore the child becomes a U.S. citizen. I would submit that that example, whatever force it has in that case, has no force in a case where you have a legally intact marriage. Well, they weren't talking about facts. Weren't they talking about a rational basis? They were talking about a rational basis. That's true. But if you look, this court is not bound by the holding in Bartholomew. So the only question is whether the reasoning is persuasive here. And I would submit that the rational basis theory there is the same as the rational basis theory that the district judge found below. Right. But the rational basis theory there is that the legal separation requirement has some rational purpose. And they said it helped protect the parental rights of the alien parent. Correct. And we had an alien parent here until after the fact, after age 18. That's correct. But the alien parent in that case, in a case where the parents are de facto separated, is more out of the picture than the alien parent here, where they are, in fact, married in an intact relationship. Well, in the Bartholomew case, was there or who had legal custody? In the Bartholomew case, the father had legal custody because in that particular case, he had raised the child all along, and he brought him to Belize, from Belize to the United States. They did not have shared custody. In this case, there is shared custody. So there are many distinctions between the Bartholomew case and this case. But I think what should be clear is that the holding of that case dealt with a different distinction than the distinction that is issued in this case. The holding in that case. Which is between children of unmarried parents and children of separated parents, whereas in this case, we had married. Absolutely. And so the relationship to the child is different. Absolutely. Okay. If there are no further questions, I'll submit. Thank you. Can I just clarify, to answer your question before, on the case? Please. Oh, yeah. This is on page 16 of the government's brief. It's all laid out. The defendant's father naturalized in 1997, when the defendant was 14. And then the mother naturalized in 2004, which is when the defendant was 21 years old. So there's a three-year difference. Thank you. The case just argued is submitted for decision.
judges: McCuskey, Schroeder, Gould